OPINION
{¶ 1} In November or December of 2006, appellant, Gareth Wilson, purchased a used Chevrolet Tahoe equipped with the OnStar system. Appellant declined OnStar services. On January 2, 2007, OnStar received an emergency button key press from the Tahoe, as the service had yet to be disabled. The OnStar employee did not receive a response, so the employee contacted the Fairfield County Sheriff's Office and requested emergency assistance be sent to the vehicle's location.
 {¶ 2} While monitoring the vehicle, the OnStar employee overheard the occupants of the vehicle discussing a possible illegal drug transaction. The employee permitted the Sheriff's dispatcher to listen to the conversation. The dispatcher contacted Deputy Shaun Meloy regarding the OnStar call. Deputy Meloy in turn notified Reynoldsburg Police Officer Joe Vincent who notified Officer James Triplett.
 {¶ 3} Officer Triplett effectuated a traffic stop of the Tahoe. As Officer Triplett approached the vehicle, he observed furtive movement from appellant, the driver of the vehicle. Officer Triplett removed appellant from the vehicle and conducted a search, whereupon marijuana was discovered.
 {¶ 4} On January 12, 2007, the Fairfield County Grand jury indicted appellant on one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree.
 {¶ 5} On March 15, 2007, appellant filed two motions to suppress, claiming an illegal traffic stop and search, and violations of Ohio's wiretapping and electronic surveillance law. A hearing was held on July 5, 2007. By entries filed August 29, 2007, the trial court denied the motions. *Page 3 
 {¶ 6} On September 4, 2007, appellant pled no contest to the charge which had been amended to a felony in the fifth degree. By judgment entry of sentence filed September 24, 2007, the trial court sentenced appellant to sixty days in jail and then five years of community control. A nunc pro tunc judgment entry of sentence was filed on October 12, 2007 to reflect the trial court's finding of guilty, and move the sixty day jail sentence under the community control sanction.
 {¶ 7} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 8} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS."
 I {¶ 9} Appellant claims the trial court erred in denying his motions to suppress. We disagree.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact *Page 4 
are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657,1663, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 11} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 12} In his motion to suppress, appellant argued the marijuana was discovered as a result of a traffic stop predicated on a violation of Ohio's wiretapping and electronic surveillance law, thereby violating his rights against unreasonable search and seizures as protected by theFourth Amendment to the United States Constitution. By entry filed *Page 5 
August 29, 2007, the trial court determined governmental action did not cause the OnStar employee to overhear the conversation:
 {¶ 13} "The Fourth Amendment is a restriction against governmental action only. The seizure by a private person is not prohibited by theFourth Amendment. Coolidge v. New Hampshire, (1971) 403 U.S. 443. The Court observes here there is no evidence that any law enforcement officers aided the On Star representative in the monitoring of the conversation. Law enforcement's role was strictly passive in terms of listening to, but not providing the means or controlling the manner of the monitoring. Thus, the Court finds no governmental action in this case and therefore no Fourth Amendment violation."
 {¶ 14} R.C. 2933.52 governs interception of wire, oral or electronic communications. Subsection (B)(2) provides for an exception to the general statutory prohibitions:
 {¶ 15} "(B) This section does not apply to any of the following:
 {¶ 16} "(2) An operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication to intercept, disclose, or use that communication in the normal course of employment while engaged in an activity that is necessary to the rendition of service or to the protection of the rights or property of the provider of that service, except that a provider of wire or electronic communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks." *Page 6 
 {¶ 17} Deputy Meloy testified he was advised by dispatch that they had "a panic alarm on a vehicle, on a green Tahoe." T. at 8. Deputy Meloy observed the vehicle, but was unable to "catch up to it to see what the problem was." Id. The vehicle then went over into Reynoldsburg, so Deputy Meloy informed Officer Vincent of the dispatch. T. at 9. During this time, dispatch informed Deputy Meloy of the conversation regarding the possible illegal drug transaction, and Deputy Meloy in turn told Officer Vincent. T. at 12.
 {¶ 18} State's Exhibit 1, the tape of the conversation between the OnStar employee and the Sheriff Office's dispatcher, included the following:
 {¶ 19} "ON STAR OPERATOR: Hi. This is Edwina calling from OnStar Emergency Services. We just had an emergency key press from a vehicle. We're not getting any voice contact at all. They're located on Churchview Drive in Pickering (sic), Ohio. The closest cross street is Finch. The vehicle is at the top of the T at Finch and Churchview Drive.
 {¶ 20} "* * *
 {¶ 21} "ON STAR OPERATOR: Great. The vehicle has — they pressed the button. I cannot get anybody to respond to me whatsoever, so I don't know if it's empty or if somebody is just not able to respond." T. at 19-20.
 {¶ 22} Thereafter, the conversation continued as follows:
 {¶ 23} "ON STAR OPERATOR: Thank you very much for holding. I do have a dispatcher back on line. I will be in the background.
 {¶ 24} "(Inaudible conversation)"
 {¶ 25} "ON STAR OPERATOR: Quite an ear full, huh, Dispatch? *Page 7 
 {¶ 26} "SHERIFF'S DISPATCHER: Right. We're monitoring Reynoldsburg Police right now." T. at 21-22.
 {¶ 27} The OnStar employee then communicated the following to the vehicle:
 {¶ 28} "ON STAR OPERATOR: This is Edwina with OnStar Emergency Services. Police have dispatched to your location at Spring Run and Reynoldsburg. I will be disconnecting. Please know we are here whenever you need us." T. at 24.
 {¶ 29} Officer Triplett was informed of the entire OnStar call. T. at 27-28. Officer Triplett caught up to the vehicle and testified to the following:
 {¶ 30} "Q. Okay. And once you caught up to it, what did you do?
 {¶ 31} "A. Well, I noticed that it was a green Chevy Tahoe, what they explained over the radio, but I also noticed that the vehicle's license plates had a — it was almost like a clear plastic wrap or Saran Wrap over top of the plate and it was kind of crinkled up. So when the light hit it, because it was dark out, when your lights it hit, I couldn't see the tag. It was obstructed. So at that point, that's when I performed a traffic stop." T. at 28-29.
 {¶ 32} Upon stopping the vehicle and approaching the driver's side, Officer Triplett observed appellant reach underneath the front driver's seat. T. at 29-30. Officer Triplett removed appellant from the vehicle "[b]ecause he was reaching under the seat. I wanted to make sure he didn't have a weapon underneath the seat." T. at 30.
 {¶ 33} Appellant concedes OnStar is an electronic communication service as defined in R.C. 2933.51(Q) and R.C. 2933.52(B)(2). However, appellant argues because he did not enter into a contract for OnStar services, the exception contained in R.C. 2933.52(B)(2) should not apply. We disagree with this logic. It is uncontested that *Page 8 
someone other than the OnStar employee initiated the contact as the "panic button" had been activated. Clearly the occupants of the vehicle initiated the contact and failed to respond to the OnStar employee.
 {¶ 34} We find there was sufficient probable cause to stop the vehicle under the exigent circumstances initiated by the OnStar call. In addition, Officer Triplett's observation of the vehicle and its questionable license tag gave him articulable suspicion to stop. Appellant's own furtive movements of reaching under his seat created an officer safety issue and further reason to proceed with the stop.
 {¶ 35} We conclude the trial court did not err in finding no governmental action in the monitoring of the OnStar call. We further find the activation of the "panic button" placed the call within the exception of R.C. 2933.52(B)(2).
 {¶ 36} Upon review, we find the trial court did not err in denying appellant's motions to suppress.
 {¶ 37} The sole assignment of error is denied. *Page 9 
 {¶ 38} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
 Farmer, P.J. Wise, J. and Edwards, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed. *Page 1